UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Perry Hood,<br><br>              Petitioner<br><br>v.<br><br>Calvin Johnson, et al.,<br><br>              Respondents | Case No. 2:22-cv-00117-CDS-VCF<br><br>**Order Denying Petitioner's Motion<br>for Relief from Judgment and<br>Granting Motion to Seal**<br><br>[ECF Nos. 12, 14] |

      Petitioner Perry Hood submits a motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6) challenging the dismissal of his 28 U.S.C. § 2254 petition for writ of habeas corpus as untimely. ECF No. 12. In addition, Hood requests leave to file certain exhibits under seal. ECF No. 14. For the reasons herein, Hood's motion for relief from judgment is denied and his motion to seal is granted.

I.      Background

      In his petition, Hood challenged a 2013 state court conviction of use of a minor in producing pornography or as a subject of sexual portrayal in performance. ECF No. 1-2. Hood was charged with one count of use of a minor in producing pornography or as a subject of sexual portrayal in performance under NRS 200.710 and four counts of felony possession of child pornography. He entered into a plea agreement and agreed to plead no contest to the use of a minor in producing pornography or as a subject of sexual portrayal in performance count.

      The state court entered the judgment of conviction on December 4, 2013, and sentenced Hood to a term of 10 years to life. ECF No. 13-30. Hood did not file a direct appeal. He filed a state habeas corpus petition to the Supreme Court of Nevada in May 2014 and the Supreme Court of Nevada declined to exercise original jurisdiction, denied the petition, and issued a notice in lieu of remittitur.

Hood filed a pro se state post-conviction habeas petition in July 2014, while his original jurisdiction habeas corpus proceedings were still pending in Supreme Court of Nevada. He then filed a counseled supplemental petition. The state court dismissed the petition and the Nevada Court of Appeals affirmed dismissal in May 2018.

Hood initiated his federal habeas proceedings in January 2022. He dated the petition January 9, 2022, and the court received it on January 21, 2022. ECF No. 1-2. Upon initial review of his petition, I instructed Hood to show cause, in writing, why this action should not be dismissed as time-barred because Hood filed his federal habeas petition nearly three years after the Antiterrorism and Effective Death Penalty Act ("AEDPA") one-year limitation period for state prisoners to file a federal habeas petition. Order, ECF No. 6.

Following his response to the show-cause order, I found that Hood failed to meet his burden showing an extraordinary circumstance warranting equitable tolling. ECF No. 9. Hood did not argue for any other basis for tolling and did not argue he was actually innocent. *Id*. I dismissed Hood's petition as untimely.

In November 2022, Hood filed a second federal habeas petition. *See Hood v. Frazier*, Case No. 3:22-cv-00486-ART-CSD. The court issued an order to show cause, and, in his response, Hood argued he was innocent because he lacked intent. *Id*. at ECF No. 7. The court concluded his petition was second or successive, but nonetheless appointed counsel. *Id*. at ECF No. 8. Such action is currently stayed. *Id*. at ECF No. 32.

Hood now requests relief from judgment to avoid a manifest injustice. ECF No. 12.  He asserts he can overcome the untimeliness of his petition because he is actually innocent of the crime to which he pled no contest. *Id*. at 2. He asserts that newly presented evidence, the photos underlying the basis of his conviction, show that there was no actual "sexual portrayal" rendering him actually innocent. *Id*.

II.     Legal Standard

    A. Motion for Relief from Judgment under Rule 60(b)(6)

Rule 60(b) provides for relief from a district court's final judgment on six grounds: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with

reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

"Rule 60(b) 'allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances.'" *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005)); *see also Wood v. Ryan*, 759 F.3d 1117, 1119 (9th Cir. 2014). "In the habeas context, Rule 60(b) applies to the extent that it is not inconsistent with AEDPA'." *Hall*, 861 F.3d at 984 (citing *Gonzalez*, 545 U.S. at 529); *see also* 28 U.S.C. § 2254 Rule 11; Fed. R. Civ. P. 81(a)(2). "AEDPA poses significant hurdles for a Rule 60(b) petitioner, but 'Rule 60(b) has an unquestionably valid role to play in habeas cases.'" *Hall*, 861 F.3d at 984 (citing *Gonzalez*, 545 U.S. at 534).

When the substance of a petitioner's claim was "previously decided on the merits, and a Rule 60(b) motion that seeks leave to develop new evidence as to the claim" the court must deny the motion "as an unauthorized second or successive petition." *Wood*, 759 F.3d at 1120 (citing *Gonzalez*, 545 U.S. at 531). Federal district courts lack jurisdiction to consider an unauthorized second or successive petition. 28 U.S.C. § 2244(b)(3) (requiring habeas petitioners to seek an order from the court of appeals authorizing the federal district court to consider a second or successive petition before such petition is filed). Rule 60(b) motions alleging a "previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar," do not advance a "claim" and are permitted despite AEDPA. *Gonzalez*, 545 U.S. at 529–30.

"Rule 60(b)(6) permits reopening for 'any . . . reason that justifies relief' other than the more specific reasons set out in Rule 60(b)(1)–(5)." *Wood*, 759 F.3d at 1119–20 (quoting Fed. R. Civ. P. 60(b)(6)). Under Rule 60(b)(6), "extraordinary circumstances" are required to justify the reopening of a final judgment. *Gonzalez*, 545 U.S. at 535; *Riley v. Filson*, 933 F.3d 1068, 1071 (9th Cir. 2019); *see also Ackermann v. United States*, 340 U.S. 193, 199 (1950); *Wood*, 759 F.3d at 1120. However,

"[s]uch circumstances 'rarely occur in the habeas context'." *Wood*, 759 F.3d at 1120 (quoting *Gonzalez*, 545 U.S. at 535); *see also Hall*, 861 F.3d at 984 (noting that "AEDPA poses significant hurdles for a Rule 60(b) petitioner").

### B. Actual Innocence

A convincing showing of actual innocence may enable habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims. *Schlup v. Delo*, 513 U.S. 298, 314–16 (1995). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citation omitted). "[I]f a petitioner ... presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316. However, the Supreme Court has cautioned that "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329); *House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is "demanding" and seldom met).

To demonstrate actual innocence, "a petitioner must show that, in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt'." *Majoy v. Roe*, 296 F.3d 770, 776 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 316). Put another way, "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327–28).

The petitioner must establish factual innocence of the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340 F.3d 877, 882–83 (9th Cir. 2003). To demonstrate actual innocence to overcome a procedural bar under *McQuiggin* and *Schlup*, a petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

### III. Discussion

The Ninth Circuit has not decided whether the actual innocence gateway applies to a defendant that pled no contest; for purposes of this decision, I assume without deciding that the gateway may apply in this context. *See Smith v. Baldwin*, 510 F.3d 1127, 1140 (9th Cir. 2007). Respondents acknowledge the potential incongruity between the purpose of the actual innocence gateway and its application to cases involving guilty or no contest pleas but did not argue that the actual innocence gateway cannot apply to Hood's plea.

#### A. Additional Background Information

Between December 2012 and January 2013, Hood went to Peoria, Arizona to visit his granddaughters, including 11-year-old A.B. ECF No. 13-1 at 6–7. During the visit, Hood offered A.B. money to pose in "pretend crime scene photographs" that would only be seen by her and Hood. *Id.* On December 31, 2012, Hood took A.B. to Wal-Mart to purchase scissors, a bra, jeans, underwear, a lace cami,[1] two toy handcuffs, and a comforter. *Id.* at 9. Hood then took A.B. to a Payless Shoe Store to buy a pair of blue high-heeled shoes. *Id.* at 10. Hood cut the legs off of the jeans to make "Daisy Duke"-type shorts. *Id.* at 8, 11. He then drove A.B. to the desert, took photos of her wearing the clothing purchased at Wal-Mart while she was lying down on the comforter and posing. *Id.* at 10. While A.B. was handcuffed, Hood lifted her shirt to reveal her mid-riff, unzipped and folded her shorts to reveal the lace underwear. *Id.* Hood stated that it was needed "for the sex appeal." *Id.*

In January 2013, a search warrant was executed on Hood's home in Tonopah, Nevada. Police officers and detectives seized his computer, flash drives, and physical photographs, including photos of prepubescent girls in sexual acts or poses that formed the basis of the child pornography counts charged against Hood in the complaint. ECF No. 13-2.

Hood had in his possession 31 photos of a girl identified as J.B. ECF No. 13-2 at 14. In the photos, J.B. is portrayed in different positions, including being tied to a chair and a bed. *Id.* She is wearing a shirt and "undershorts." *Id.* Her shirt is lifted to expose her mid-riff. *Id.* J.B. is blindfolded in all but 2 of the photos and in some photos, J.B.'s legs are spread apart. ECF No. 15-2. Hood was

---

[1] The court interprets this as a camisole.

charged with use of a minor in producing pornography or as a subject of sexual portrayal in performance based on J.B.'s photos.

### B. Evidence Presented During Plea Process

The amended information describes Hood's conduct as "photographing a minor child laying on a bed with her hands and feet tied up, while wearing a blindfold." ECF No. 13-6. Hood pled no contest and during the plea hearing the state court read the description of the charge from the amended information. ECF No. 13-18 at 10. The state court asked Hood if the amended information was accurate and he responded that "at the time we took the pictures, there was nothing in my mind of a sexual nature." *Id*. Hood then explained that he discussed old movies with J.B. where "there was a clear villain, a clear hero" and "a daughter who was kidnapped." *Id*. at 11. Hood suggested to J.B. that he could take her photo as if she was being kidnapped. *Id*. Hood agreed that a jury may perceive at least one of the photos as being sexual. *Id*. at 12.

Hood's counsel provided to the state court that, unless the possession of child pornography counts were severed, a jury would be presented with other photos to associate with the photos of J.B. *Id*. at 13. His counsel stated that "we might be having a different conversation" if the photo of J.B. was isolated by itself. *Id*. at 13-14.

### C. Newly Presented Evidence

As a preliminary matter, Respondents contend that the photos of J.B. are not new, because the descriptions of the photos were presented to the state court. ECF No. 21 at 5. The relevant standard, however, is not whether the evidence was "newly discovered," but whether the evidence was "*introduced to the jury* at trial." *See Griffin v. Johnson*, 350 F.3d 956, 963 (9th Cir. 2003) (emphasis in original); *see also House*, 547 U.S. at 538 ("Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record."). As such, I will consider the photos in determining whether Hood has demonstrated actual innocence.

### D. Analysis

Hood argues that although this evidence is highly disturbing, the photos are not sexual and do not constitute sexual portrayal under the statute. ECF No. 12 at 13-14. He asserts that the

photos are clearly intended to show a child who is being held as a hostage. *Id.* at 13. Respondents argue that Hood took similar photos of a different minor victim and that he admitted he instructed the other victim to lift her shirt exposing her midriff and unzipped her shorts to expose underwear "for the sex appeal." ECF No. 13-1 at 11. Respondents further argue that a rational juror could conclude that Hood depicted J.B. tied up, blindfolded, and with her mid-riff exposed to simulate sexual conduct or to portray her in a manner that appealed to the prurient interest. ECF No. 21 at 6.

To be guilty of the crime of use of a minor in producing pornography or as a subject of sexual portrayal in performance under NRS 200.710(2) a person knowingly uses, encourages, entices, coerces, or permits a minor to be the subject of sexual portrayal in a performance. NRS 200.700(4) defines sexual portrayal as "the depiction of a person in a manner which appeal to the prurient interest in sex and which does not have a serious literary, artistic, political or scientific value." What is prurient depends on "the views of an average person applying contemporary community standards." *See Shue v. State*, 407 P.3d 322 (Nev. 2017) (explaining that a "prurient" interest in sex involves "a shameful or morbid interest in nudity, sex, or excretion," or involving "sexual responses over and beyond those that would be characterized as normal.").

Considering all of the evidence, Hood has not established that no reasonable juror could have found him guilty. The newly presented photos and Hood's argument that none of the photos show any nudity or other type of overt sexual behavior do not demonstrate that, it is more likely than not, that no reasonable juror would have found Hood guilty beyond a reasonable doubt. The photos depict a minor tied to a chair and a bed, who was blindfolded, and had her shirt lifted to expose her mid-riff. Despite Hood's explanation that the photos simulated a hostage scene of a child, a rational juror could conclude that Hood posed the minor to simulate sexual conduct or to portray her in a manner that appealed to his prurient interest.

In addition, there was substantial support for Hood's conviction and no contest plea presented at the plea hearing, including Hood's counsel's statement that unless the possession of child pornography counts were severed, additional photos demonstrating sexual portrayal in a more definitive manner would have been presented to the jury in juxtaposition to the photos

related to his use of a minor in producing pornography or as a subject of sexual portrayal in performance charge. Further, Hood agreed with the state court that that a jury may perceive at least one of the photos as being sexual. Consequently, the new evidence falls below that needed to establish the very rare claim of actual innocence, so I deny Hood's motion for relief from judgment.

### IV.  Motion to Seal

Hood seeks leave to file under seal two documents: Exhibit 21, petitioner's Presentence Investigation Report ("PSI") (ECF No. 15-1), dated July 26, 2017; and Exhibit 57, photos of a child, J.B. (ECF No. 15-2). Under Nevada law, the PSI is "confidential and must not be made a part of any public record." Nev. Rev. Stat. § 176.156(5).

Having reviewed and considered the matter in accordance with *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172 (9th Cir. 2006), and its progeny, I find that a compelling need to protect the petitioner and the victim's safety, privacy, and/or personal identifying information outweighs the public interest in open access to court records. Accordingly, Hood's motion to seal is granted, and Exhibits 21 and 57 are properly filed under seal and shall remain sealed until further order of the Court.

### V.  Conclusion

IT IS HEREBY ORDERED that petitioner Perry Hood's motion for relief from judgment under Federal Rule of Civil Procedure 60(b)(6) **[ECF No. 12] is denied.**

IT IS FURTHER ORDERED that, to the extent necessary, a certificate of appealability is denied as jurists of reason would not find the court's dismissal of the petition to be debatable or wrong.

IT IS FURTHER ORDERED that Hood's motion to seal **[ECF No. 14] is granted**. The Clerk of Court is instructed to maintain the seal on ECF No. 15; ECF No. 15-1; and ECF No. 15-2.

Dated: September 18, 2024

_____
Cristina D. Silva
United States District Judge